IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| DONYELLE PLESHETTE MORTON-THOMPSON, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> Defendant. ) <br> _____) | Civil No. 3:14cv179 (REP) |

## SECOND REPORT AND RECOMMENDATION

This matter comes before the Court for further consideration in light of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). On March 5, 2015, the undersigned issued a Report and Recommendation (ECF No. 17), recommending that Plaintiff's Motion for Summary Judgment (ECF No. 13) be denied, that Defendant's Motion for Summary Judgment (ECF No. 15) be granted and that the final decision of the Commissioner be affirmed. On March 18, 2015, the Fourth Circuit issued its decision in *Masico*, further clarifying requirements for an administrative law judge ("ALJ") in assessing a claimant's alleged disability. On April 14, 2015, the District Court remanded the matter back to the undersigned to determine whether *Mascio* changed this Court's recommendation.

Plaintiff argues that *Mascio* requires remand, because the ALJ failed to properly consider her residual functional capacity ("RFC") and analyze her credibility. (Pl.'s Supp. Br. in Light of *Mascio v. Colvin* ("Pl.'s Supp. Br.") (ECF No. 24)). Defendant argues that the ALJ's decision withstands scrutiny under *Masico*, because the ALJ properly considered the relevant evidence,

Plaintiff's functional limitations and credibility. (Def.'s Supp. Br. in Light of *Mascio v. Colvin* ("Def.'s Supp. Br.") (ECF No. 23); (Def's Reply to Pl.'s Supp. Br. in Light of *Masico v. Colvin* (Def.'s Reply") (ECF No. 24)).

For the reasons that follow, in light of *Mascio*, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 15) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

## I. BACKGROUND

Because this Report and Recommendation only addresses legal issues in light of *Masico*, the Court will refer to only those facts necessary to resolve those issues. For a full recitation of the background in this matter, the Court refers the parties to the first R&R.

## II. PROCEDURAL HISTORY

On September 3, 2010, Donyelle P. Morton-Thompson ("Plaintiff") filed for Social Security Disability Insurace Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability due to anemia, arthritis, asthma, fibromyalgia and migraine headaches with an alleged onset date of June 22, 2010. (R. at 12, 181, 200.) Plaintiff's claims were denied initially on February 16, 2011, and upon reconsideration on August 12, 2011. (R. at 12.) On August 25, 2011, Plaintiff filed a written request for a hearing. (R. at 12.) On September 6, 2012, Plaintiff (represented by counsel) testified before an ALJ during a hearing. (R. at 12.) On September 21, 2012, the ALJ issued a written decision denying Plaintiff's claims. (R. at 12-25.) On January 30, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1.)

Plaintiff appealed the Commissioner's decision to the District Court, challenging the ALJ's decision on five grounds, and this Court issued its first R&R on March 5, 2015, recommending that Plaintiff's Motion for Summary Judgment (ECF No. 13) be denied, that Defendant's Motion for Summary Judgment (ECF No. 15) be granted and that the final decision of the Commissioner be affirmed. On April 14, 2015, after the Fourth Circuit issued *Mascio*, the District Court entered an Order (ECF No. 21), remanding the matter to this Court for further consideration in light of *Mascio*.

### III. QUESTIONS PRESENTED

1. Did the ALJ err in assessing Plaintiff's credibility?
2. Did the ALJ err in assessing Plaintiff's RFC?

### IV. STANDARD OF REVIEW

For a full discussion of the standard of review, the Court directs the parties to Section VI of the first R&R, which the Court incorporates by reference. To determine whether a claimant is disabled, the ALJ must engage in a five-step process. *Mascio*, 780 F.3d at 634. At step one, the ALJ must determine whether the claimant has been working. *Id.* At step two, the ALJ must determine whether a claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* At step three, the ALJ determines whether the impairments meet or equal an impairment listed in the regulations. *Id.* Before moving to step four, the ALJ must also determine a claimant's RFC, which is "the most" that a claimant can do, despite physical and mental limitations that affect the claimant's ability to work. *Id.* at 635. At step four, the ALJ must determine whether the claimant can return to past work given the claimant's RFC. *Id.* at 634. Finally, at step five, the ALJ must determine whether plaintiff may perform other work

existing in the economy. *Id.* If substantial evidence supports the ALJ's decision, the ALJ's decision must be affirmed. *Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012).

## V. DISCUSSION

The Court will begin its discussion with the Fourth Circuit's holding in *Mascio v. Colvin*. The Court will then analyze the ALJ's assessments of Plaintiff's credibility and RFC in light of *Mascio*. The Court ultimately finds that the ALJ's assessment of Plaintiff's credibility survives the scrutiny of *Mascio*, while her assessment of Plaintiff's RFC does not.

### A. *Mascio v. Colvin*

In *Mascio v. Colvin*, the claimant appealed the Commissioner's denial of benefits, arguing that the ALJ erred by: (1) not conducting a function-by-function analysis; (2) not including Masico's concentration, persistence or pace limitations in her hypothetical to the vocational expert ("VE"); (3) determining Mascio's RFC before assessing her credibility; and, (4) not applying the so-called "great weight rule" to Mascio's subjective claims of pain. *Masico*, 780 F.3d at 634. The Fourth Circuit held that remand was required because: (1) the ALJ did not conduct a function-by-function analysis when the facts of the case required it; (2) the ALJ ignored Mascio's moderate limitation in her ability to maintain her concentration, persistence or pace without sufficient explanation; and (3) the ALJ determined Mascio's RFC before assessing her credibility. *Id.* at 633.

First, considering the need for a function-by-function analysis, the Fourth Circuit discussed Social Security Ruling 96-8p, which explains how adjudicators should assess a claimant's RFC. *Id.* at 636. The ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id.* (citing SSR 96-8p). Only after the function-by-function analysis can the ALJ express the

4

claimant's RFC in terms of the exertional levels of work — sedentary, light, medium, heavy and very heavy. *Id.* (citing SSR 96-8p). The ALJ must include "a narrative discussion describing how the evidence supports each discussion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)" when analyzing a claimant's RFC. *Id.* (citing SSR 96-8p).

The Fourth Circuit declined to adopt a *per se* rule requiring remand when the ALJ failed to perform an explicit function-by-function analysis. *Id.* Instead, the Fourth Circuit held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* The Fourth Circuit remanded in *Masico*, because the ALJ's opinion did not contain the analysis needed for a meaningful review. *Id.* at 636-37. In particular, the Fourth Circuit pointed out that the ALJ did not discuss claimant's ability to perform certain functions for a full workday. *Id.* at 637. This lack of explanation was especially troubling given that the record contained conflicting evidence as to claimant's RFC. *Id.* The Fourth Circuit ordered a remand, because it "[was] left to guess about how the ALJ arrived at her conclusion on Mascio's ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." *Id.*

Second, the Fourth Circuit recognized that a hypothetical presented to a VE is legally insufficient only if the ALJ fails to account for a relevant factor when determining a claimant's RFC. *Id.* at 638. The ALJ inquired of the VE whether jobs existed for:

>   a hypothetical person with Mascio's age, education and work
>   experience, where the claimant is limited to light work but [can] sit
>   or stand at will about every 30 minutes, and [can] do only
>   occasional postural activities such as balancing, stopping, kneeling,
>   crouching, crawling and climbing; [but cannot be] expos[ed] to
>   hazardous conditions such as heights or moving machinery; and
>   can do . . . frequent fingering.

*Id.* at 637 (citation omitted).

This hypothetical failed to address the claimant's mental limitations even though the ALJ had found that the claimant had moderate difficulties in maintaining concentration, persistence or pace. *Id.* at 637-38. The Fourth Circuit noted that "the ability to perform simple task differs from the ability to stay on task. Only the latter limitation . . . account[s] for a claimant's limitation in concentration, persistence, or pace." *Id.* at 638. Accordingly, the Fourth Circuit held that the ALJ's hypothetical was insufficient, because it did not address a relevant factor in claimant's RFC. *Id.*

Finally, the Fourth Circuit held in *Mascio* that the ALJ erred by determining claimant's RFC before assessing her credibility. 780 F.3d at 639. This error stemmed from the ALJ's use of the following boilerplate language in his opinion:

>   After careful consideration of the evidence, the undersigned finds
>   that the claimant's medically determinable impairments could
>   reasonably be expected to cause the alleged symptoms; however,
>   the claimant's statements concerning the intensity, persistence and
>   limiting effects of these symptoms are not credible to the extent
>   they are inconsistent with the above residual functional capacity
>   assessment.

*Id.* (citations omitted).

The Fourth Circuit opined that the use of this boilerplate language constituted error, because it implied that claimant's ability to work was determined first and then used to determine claimant's credibility when, in fact, "an ALJ is required to consider a claimant's pain

as part of his analysis of [RFC]." *Id.* The Fourth Circuit then explained that this error would have been harmless if the ALJ properly analyzed claimant's credibility elsewhere. *Id.* The Fourth Circuit pointed out that the ALJ chose to credit some, but not all, of claimant's statements regarding pain, without explaining how he arrived at his decision. *Id.* at 640. All that the ALJ provided was "the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's [RFC]." *Id.*

B. The ALJ did not err in assessing Plaintiff's credibility.

In this case, Plaintiff argues that the ALJ did not properly analyze Plaintiff's credibility and that he did not articulate valid reasons for rejecting her credibility as to her statements regarding pain. (Pl.'s Suppl. Br. at 3). Defendant responds that the ALJ's error of determining RFC before assessing her credibility is a harmless error, because the ALJ properly analyzed Plaintiff's credibility based on a consideration of relevant evidence. (Def.'s Suppl. Br. at 7.).

Here, using the same boilerplate language as in *Mascio*, the ALJ opined that Plaintiff's statements as to pain were not credible. (R. at 18.) However, unlike in *Mascio*, the ALJ went on to discuss Plaintiff's medical records. (R. at 18-22.) The ALJ elaborated that Plaintiff's allegations of complete inability to work were "not supported by the medical signs and findings and [were] not consistent with the record." (R. at 33.) Accordingly, the ALJ's RFC determination accounted for Plaintiff's symptoms and limitations to the extent that they were found credible. (R. at 33.) In doing so, the ALJ clearly diminished Plaintiff's credibility on the basis of medical records. Therefore, the ALJ's use of the boilerplate language was a harmless error. Further, substantial evidence supports the ALJ's decision.

Plaintiff's medical records support the ALJ's determination. The record contains numerous examples of Plaintiff's ability to function beyond her self-professed limitations.

7

Despite Plaintiff's alleged inability to care for herself, treatment providers noted that she appeared well-groomed. (R. at 550, 553, 698, 707.) Objective medical evidence, such as x-rays and MRIs, was uniformly negative for significant physical problems. (R. at 328, 379, 402-04, 566, 577-78, 635, 638-40, 659.) During physical examinations, Plaintiff routinely had normal motor strength in all muscles tested. (R. at 325, 381, 578, 582-83, 624.) Plaintiff regularly demonstrated full range of motion in her knees. (R. at 325, 328, 578, 582-83.)

Both Dr. Esway and Dr. Burkhardt remarked that Plaintiff demonstrated hypersensitivity to touch around her knees and ankles despite her relatively mild physical issues. (R. at 325-26, 582.) Dr. Esway specifically noted that Plaintiff's description of her lack of improvement following treatment, as well as her reaction to clinical examination, seemed disproportionate to his objective clinical findings. (R. at 326.) Dr. Burkhardt's opinion that Plaintiff could perform sedentary work, though not entitled to special deference, is nevertheless indicative of his assessment of Plaintiff's physical limitations based on his treatment of Plaintiff. (R. at 580.)

Similarly, Plaintiff's own statements — both to treatment providers and made during her hearing before the ALJ — support the ALJ's credibility determination. Plaintiff frequently noted that her mood and outlook were improving with medication. (R. at 549, 680, 688, 699, 702-04, 707.) Pain medications and injections helped alleviate her pain. (R. at 582-83, 654, 698.) She joined a local YMCA club, where she participated in water aerobics and used the sauna three times per week. (R. at 675.) Plaintiff also walked at the YMCA. (R. at 675, 677-78.) Plaintiff attended church and tried to attend weekly bible study during the week when she could. (R. at 16, 42-43, 690, 699.) Plaintiff attended her son's football games and coached him in track. (R. at 43-44, 679, 690.) She spent time with family and friends. (R. at 690.) Therefore, substantial evidence supports the ALJ's finding regarding Plaintiff's credibility.

C. The ALJ erred in assessing Plaintiff's RFC.

Plaintiff argues that the ALJ determined Plaintiff's RFC to perform sedentary work without properly analyzing her functional abilities. (Pl.'s Suppl. Br. at 1.) Defendant responds that the ALJ satisfied the requirements of SSR 96-8P and provided for meaningful judicial review of her RFC assessment, because the ALJ considered all relevant evidence and sufficiently expressed Plaintiff's limitations in terms of work-related functions. (Def.'s Suppl. Br.at 3-4.)

The Fourth Circuit held in *Mascio* that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636. In light of *Mascio*, at least three district courts have found that in the absence of an explicit function-by-function analysis, the reviewing court must assess whether the ALJ's RFC analysis considered the relevant function, whether his decision provides a sufficient basis to review his conclusions and, ultimately, whether substantial evidence supports that decision. *See, e.g., Carver v. Colvin*, 2015 WL 4077466, at *10 (M.D.N.C. July 6, 2015) (recommending remand because ALJ neglected to assess claimant's ability to walk or stand for a full workday); *Scruggs v. Colvin*, 2015 WL 2250890, at *4 (W.D.N.C. May 13, 2015) (requiring remand because ALJ's decision did not address the plaintiff's ability to complete tasks for full workday); *Ashby v. Colvin*, 2015 WL 1481625, at *3 (S.D.W.Va. March 31, 2015) (holding that ALJ did not conduct explicit function-by-function analysis of plaintiff's physical abilities, but sufficient evidence existed showing that ALJ analyzed relevant functions).

Here, the ALJ did not perform an explicit function-by-function analysis. The ALJ opined that Plaintiff maintained the RFC to perform a full range of sedentary work with certain limitations. (R. at 17.) Plaintiff required a cane for "prolonged" walking and standing. (R. at

17.) Plaintiff could frequently climb ramps and stairs, but could never climb ladders, ropes or scaffolds. (R. at 17.) She could occasionally balance, stoop, kneel and crouch. (R. at 17.) She should avoid concentrated exposure to wetness, vibration, fumes, odors, dusts, gasses and other pulmonary irritants, as well as unprotected heights and hazardous machinery. (R. at 17.) Plaintiff could perform simple, routine work and could understand simple instructions. (R. at 17.)

Although the ALJ provided a discussion of Plaintiff's medical records in support of Plaintiff's ability to perform a full range of work with certain limitations, the ALJ failed to discuss Plaintiff's ability to walk or stand and did not discuss those abilities in terms of a full workday. The regulations provide that sedentary work often involves a certain amount of walking and standing. 20 C.F.R. § 404.1567(a) ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."). Walking and standing constituted relevant functions, especially given that the regulations state that sedentary works occasionally require walking and standing, and given that the ALJ noted that Plaintiff required a use of a cane for walking or standing for prolonged periods.

Furthermore, as in *Masico*, contradictory evidence in the record exists regarding Plaintiff's ability to walk and stand. For example, Dr. Jessee opined that Plaintiff could only stand, sit and walk for four hours in a normal workday and could never lift or carry any weight. (R. at 570.) Dr. Jessee found Plaintiff could never twist, stoop, bend, crouch or climb ladders or stairs. (R. at 570.) In contrast, in June 2010, Dr. Mathe, a neurologist, examined Plaintiff and observed full motor and strength in Plaintiff's arms and legs. (R. at 381.) Also, Dr. Burkhardt, an orthopedist who treated Plaintiff from June 23, 2010, until July 13, 2011, opined that Plaintiff

"was not totally disabled from doing any kind of work" and could "certainly be qualified to do sedentary-type work." (R. at 580.)

Here, the ALJ failed to discuss Plaintiff's ability to perform relevant functions — walking and standing — despite conflicting evidence in the record and Plaintiff's RFC of sedentary work. Additionally, the ALJ failed to discuss Plaintiff's ability to perform those relevant functions for a full workday. As the Fourth Circuit recently found in *Mascio*, this constituted error warranting remand. 780 F.3d at 636 (agreeing with Second Circuit that failure to assess claimant's capacity for relevant functions warranted remand); *see also, Carver*, 2015 WL 4077466, at *10 (recommending remand where ALJ failed to assess ability to walk or stand for a full workday); *Scruggs*, 2015 WL 2250890, at *4 (requiring remand because ALJ's decision did not address the plaintiff's ability to complete tasks for full workday).

D. The ALJ's failure to perform an explicit function-by-function analysis is not a harmless error.

The Court will also analyze the ALJ's assessment of Plaintiff's RFC under the traditional harmless error doctrine, because although phrased differently, Defendant essentially argues that the ALJ's failure to perform an explicit function-by-function analysis constitutes harmless error. Defendant maintains that the ALJ satisfied the requirements of SSR 96-8p, because she considered the relevant evidence and Plaintiff's work limitations. (Def.'s Reply at 3.)

Although the Fourth Circuit has yet to address the application of the harmless error rule to Social Security Disability cases in a published opinion, it has applied the harmless error doctrine when reviewing Social Security appeals in two unpublished opinions. *See Garner v. Astrue*, 436 F. App'x 224, 225 n.* (4th Cir. 2011) (unpublished) (finding drafting error to constitute harmless error); *Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished) (finding error by the ALJ regarding time restrictions for sitting and standing to be

11

harmless). Consequently, the Court has previously held that the harmless error rule applies to Social Security Disability appeals. *James v. Colvin*, 2014 WL 4630598, at *15 (E.D. Va. Sept. 11, 2014).

Having determined that the harmless error rule applies, the question then becomes whether the error here was harmless. When reviewing a decision for harmless error, a court, among other things, must look at "[a]n estimation of the likelihood that the result would have been different." *Shineski v. Sanders* 556 U.S. 396, 411-12 (2009). Against this standard, the Court concludes that the error cannot be deemed harmless.

The ALJ failed to discuss Plaintiff's ability to walk or stand in a full workday despite finding that Plaintiff has the RFC to perform a full range of sedentary work. By doing so, the ALJ did not consider all of the relevant evidence, because Plaintiff's ability to walk or stand during a full workday is a significant piece of Plaintiff's capacity to perform a full range of sedentary work. As noted above, by definition provided in the controlling regulation, sedentary work involves a certain amount of walking and standing. *See* 20 C.F.R. § 404.1567(a). This piece of evidence may have changed the ALJ's determination of Plaintiff's RFC. Therefore, the ALJ's failure to explicitly discuss Plaintiff's functional abilities to walk or stand in a full workday cannot be found to be harmless under *Mascio* and remand must occur.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's Motion for Summary Judgment (ECF No. 13) be GRANTED, that Defendant's Motion for

Summary Judgment (ECF No. 15) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.[1]

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                            /s/
                                    David J. Novak
                                    United States Magistrate Judge

Richmond, Virginia
Date: August 19, 2015

---

[1] The Court only addressed Plaintiff's challenges affected by *Mascio*. Accordingly, the Court stands by the analysis determining that substantial evidence supports the ALJ's decision in assessing Dr. Jessee's opinion, Dr. Brill's opinion and the state agency physicians' opinions. (First R&R at 39-48.)

13